UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CRIMINAL ACTION NO. 08-26-C**

**UNITED STATES OF AMERICA,**                                                                    **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**ALEXANDER LUCAS,**                                                                              **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of the defendant, Alexander Lucas, to suppress all evidence obtained during a search of his residence and any statements given by him.  DE 21.  A suppression hearing was held before the magistrate judge on June 24, 2008 and July 7, 2008, and the magistrate judge issued Findings of Fact, Conclusions of Law, and Recommendation, DE 44, on September 25, 2008.  Lucas filed objections on October 2, 2008.  DE 45.  When a party to an action submits objections to the magistrate judge's report, the district court judge reviews the record *de novo*.  28 U.S.C. § 636 (b)(1)(C).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the motion.

**I.**     **Findings of Fact**

The defendant objects to two of the magistrate judge's findings of fact. First, he objects to the findings regarding the timeline of events that occurred on December 18, 2007.  According to the magistrate judge's report, the defendant signed the first consent-to-search form in his house at 7:45 p.m, approximately ten

minutes after Detective Donald Burbrink and Sergeant Jason Lainhart arrived at the defendant's house. DE 44 at 3. Then, at 8:21 p.m., only thirty-six minutes after Lucas allegedly signed the first consent-to-search form, he signed a second consent form. DE 44 at 6.

Detective Burbrink testified that the consent form was signed at 17:45, which he clarified as meaning 5:45 p.m. DE 32 at 25-26, 63-64. There is no evidence in the record to support a finding that the first consent form was signed at 7:45 p.m. Therefore, the court rejects the magistrate judge's finding and finds that the defendant signed the first consent form at 5:45 p.m. on December 18, 2007, approximately ten minutes after Detective Burbrink and Sergeant Lainhart arrived at the defendant's house. Furthermore, Lucas signed the second consent form at 8:21 p.m., which was two hours and thirty-six minutes after he signed the first form.

Second, Lucas objects to the magistrate judge's findings concerning the circumstances surrounding Lucas's statement to Detective Burbrink that he used the internet to learn about growing marijuana. The magistrate judge found that Sergeant Lainhart had already begun examining the computer files before Lucas told Burbrink that he learned about growing marijuana from the internet. The defendant argues that Burbrink's testimony regarding this conversation is inconsistent with that of Lainhart. Detective Burbrink testified that (1) he did not know whether Lucas made the statement before Lainhart began searching the computer, DE 32 at

36-37; (2) he did not tell Lainhart about the conversation, DE 32 at 37; (3) he did not tell Lainhart what Lucas had told him, DE 32 at 37; and (4) he did not know whether Lainhart overheard his conversation with Lucas, DE 32 at 37-38. Sergeant Lainhart testified that (1) he was aware that Burbrink and Lucas were having a conversation on the couch while he was looking at the computer, DE 32 at 82; (2) "in some stage" of the conversation, Lucas told Burbrink how he learned to clone marijuana plants, DE 32 at 82-83; and (3) the conversation between Burbrink and Lucas was "in and out" with other detectives, DE 32 at 83. The testimony is not inconsistent. Lainhart never testified that he took part in the conversation or heard Lucas state how he learned about growing marijuana from the internet. Based on the testimony at the suppression hearing, the magistrate judge correctly found that Lainhart had already begun searching Lucas's computer at the time Lucas told Burbrink that he used the internet to learn how to grow marijuana.

Upon conducting a *de novo* review of the record, the court adopts all other findings of fact made by the magistrate judge.

**II.      Conclusions of Law**

The defendant objects to the magistrate judge's recommendation regarding the scope of consent, the inevitable discovery doctrine, and attenuation. Concerning the scope of consent, Lucas limits his objection to (1) the finding that the search of the computer was within the scope of consent given at 5:45 p.m. on December 18, 2007; (2) the conclusion that the search of the computer and its

files is analogous to the search of a closed container; and (3) the use of unpublished opinions to support the recommendation.

Lucas argues that Sergeant Lainhart's search of his computer was random, beyond the scope of consent, and, thus, violated the Fourth Amendment. According to Lucas, his consent was limited to a search of his home for narcotics and records pertaining to narcotics, and that consent did not include a search of his computer. Furthermore, the defendant maintains that his silence and failure to object to the search of his computer does not establish that he consented to the search.

A search is valid "as long as an officer has an objectively reasonable belief that the search was within the scope of the consent." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547-48 (6th Cir. 2003) (citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). In this case, the scope of consent included "other material or records pertaining to narcotics." Sergeant Lainhart testified that it is common for persons growing marijuana to take pictures of the plants in order to show and document their growth. DE 32 at 74-75. He also stated that it is common for persons growing marijuana to take pictures of friends smoking the drug. DE 32 at 75. The officers discovered a handwritten chart that included the following information: names of plants, height in inches, the pot size used, and a to-do list. DE 32 at 76. The chart was found in a pull-out keyboard shelf under Lucas's computer table. DE 32 at 76. Lainhart testified that it is very common for someone to keep the type of

data that was found in the handwritten chart on a computer. DE 32 at 78. In addition, Lainhart stated that, based on his experience, a person who took pictures of his friends smoking marijuana is likely to post those pictures on the internet or save the pictures on a disk drive so that the person can share those pictures with other people. DE 32 at 78. Finally, he believed that it was likely that Lucas would input the data from his handwritten chart into an Excel document. DE 32 at 78-79.

Based on the totality of the circumstances, an objectively reasonable officer would have considered Lucas's consent to search "other material and records pertaining to narcotics" to include the laptop computer and the digital camera. The officers had suffient reason to believe that information regarding marijuana cultivation would be found on both the digital camera and the computer. Even though the consent form did not specifically mention computers or digital cameras, many federal courts have found that the search of a computer is appropriate in similar circumstances. For example, in *United States v. Rossby*, 81 Fed. Appx. 109, 110 (9th Cir. 2003), a consent to search "letters, papers, materials, or other property" was interpreted to include the defendant's computer. Because of the similarity between the phrases "other material or records" and "letters, papers, materials, or other property," the Ninth Circuit's reasoning is persuasive.

The defendant argues that his silence or failure to object to the search of the computer cannot be used to establish consent. This is correct. However, the magistrate judge did not base his recommendation that consent existed on the

5

defendant's silence or failure to object. The magistrate judge concluded, and this court agrees, that the defendant consented to the search of the computer by signing the written consent form.

By telling Sergeant Lainhart that the computer was not password-protected and by failing to object to the search of the computer, Lucas clarified that he believed the search of the computer was included within the scope of his original consent. This matter is unlike *Patzner v. Burkett*, 779 F.2d 1363, 1369 (8th Cir. 1985), where the court held that "consent cannot be presumed from the absence of proof that a person resisted police authority or proof that the person merely acquiesced." Lucas's act of signing the written consent form, not his silence or failure to object, created the consent in this case.

The facts in this case more closely resemble those in *United States v. Garrido-Santana*, 360 F.3d 565, (6th Cir. 2004), where the Sixth Circuit held that the police officers' belief that the defendant's general consent to search the automobile included the consent to search the vehicle's gas tank was objectively reasonable and did not violate the Fourth Amendment. The court noted that the defendant had the opportunity to object to the officers' search of the gas tank. By not objecting to the search of the gas tank, the defendant neither revoked his original consent nor clarified its scope. Similarly, Sergeant Lainhart and Detective Burbrink obtained consent from Lucas to search his home for "other material and records pertaining to narcotics." The defendant was present when Sergeant

Lainhart began searching the computer and failed to object to the search.  In fact, the defendant assisted Lainhart by confirming that the computer was not password-protected.  Because Lucas neither revoked his consent nor clarified its scope, the court finds that the search of the computer was within the scope of Lucas's initial consent.

Next, Lucas objects to the magistrate judge's conclusion that the search of his computer and digital camera should be analogized to the search of a readily-opened, closed container, which can be searched without any additional consent of the owner.  Lucas argues that a computer cannot automatically be considered a closed container in every situation where the defendant has consented to a search for materials or records pertaining to narcotics.  The court agrees with this assertion.  The Tenth Circuit reasoned that "[b]ecause computers can hold so much information touching on many different areas of a person's life, there is a greater potential for the "intermingling" of documents and a consequent invasion of privacy when police execute a search for evidence on a computer." *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001).  Initially, the Tenth Circuit held that "when officers come across relevant computer files intermingled with irrelevant computer files, they may seal or hold the computer pending approval by a magistrate of the conditions and limitations on a further search of the computer." *Id.* (citing *United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999)).  The Sixth Circuit has never required officers to seek such approval, and the Tenth

Circuit subsequently clarified its opinion by stating that *Carey* "simply stands for the proposition that law enforcement may not expand the scope of a search beyond its original justification." *United States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006).

In the instant case, the officers had sufficient reason to believe that the computer and digital camera contained "other material or records pertaining to narcotics."  While Sergeant Lainhart did not employ a detailed protocol to limit his search of the computer only to information within the scope of consent, there is no evidence to suggest that he exceeded the scope of consent.  DE 32 at 80.  Lainhart testified that he first searched the "My Documents" folder, which included two folders, "Documents" and "My Photos."  DE 32 at 80.  While searching the "Documents" folder, Lainhart did not find any Excel documents.  DE 32 at 80.  Next, he reviewed the "My Photos" folder but did not see anything relating to narcotics usage or the growing of marijuana.  DE 32 at 80.  Lainhart then noticed that the computer had a removable drive.  DE 32 at 80.  When he accessed the removable drive, thumbnail images of child pornography appeared.  DE 32 at 80.  Even though Lainhart may not have used a sophisticated method to search the computer, his search was not random.  Because Sergeant Lainhart stopped his search upon discovering the child pornography, he did not expand the search beyond the consent.  Thus, under the circumstances, the magistrate judge's comparison of Lucas's computer to a closed container is appropriate.

The magistrate judge did not err by using unpublished decisions to support his conclusions of law. While unpublished decisions are not binding precedent, they may be cited as persuasive authority. *See, e.g.*, *In re Hess*, 209 B.R. 79, 82 n.3 (B.A.P. 6th Cir. 1997).

The court has determined that the search of the digital camera and laptop computer was within the scope of Lucas's written consent. Because of this finding, evidence obtained from the search should not be suppressed. Even if the court had found otherwise, suppression would still be inappropriate because the evidence would have been discovered inevitably. As stated above, an objectively reasonable officer would believe, under the totality of the circumstances, that "other material or records pertaining to narcotics" includes the computer and the digital camera. The officers stated that they believed that probable cause existed to obtain a search warrant and that they would have procured a search warrant if the defendant refused to consent to the search. DE 32 at 23, 41, 69-70, and 96–97. Because the warrant would contain the same phrase, "other material or records pertaining to narcotics," that was listed in the consent form, the officers would have had the authority to search the computer and the digital camera. Based on his training and experience and his common practice in narcotics investigations, Sergeant Lainhart would have searched the digital camera and the computer after obtaining the warrant. Therefore, the evidence would have been inevitably discovered and should not be suppressed.

Finally, because the court has not found any illegal conduct by the officers, there is no reason to address the defendant's attenuation argument. The attenuation doctrine permits evidence obtained after an illegal search or seizure to be admitted into evidence as long as it has an independent source or is sufficiently attenuated from the illegal conduct. *See United States v. Williams*, 173 F.3d 431 at *2 (6th Cir. 1999). In this case, the initial consent obtained by the officers was valid and encompassed the search of the computer and the digital camera. Therefore, no illegal search or seizure occurred, and a discussion of attenuation is not required.

After conducting a *de novo* review of the record, the court adopts the magistrate judge's conclusions of law and recommendation as well as his well-reasoned discussion of these issues.

### III.  Conclusion

Accordingly,

**IT IS ORDERED** that the Findings of Fact, Conclusions of Law, and Recommendation of the Magistrate Judge, DE 44, are **ADOPTED,** as modified by this order, as the opinion of the court.

**IT IS FURTHER ORDERED** that the defendant's motion to suppress, DE 21, is **DENIED**.

Signed on  November 6, 2008

**Jennifer B. Coffman, Judge**
**United States District Court**

11